# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

N⁰ 16-CV-4931 (JFB)

---

CORDELL TUCKER,

Petitioner,

VERSUS

BRUCE YELICH, SUPERINTENDENT, BAREHILL CORRECTIONAL FACILITY,

Respondent.

---

**MEMORANDUM AND ORDER**
August 24, 2017

---

JOSEPH F. BIANCO, District Judge:

Cordell Tucker (hereinafter "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. (Pet., ECF No. 1.)

On May 24, 2014, petitioner was convicted of manslaughter in the second degree (N.Y. Penal Law ("Penal Law") § 125.15(1)); grand larceny in the third degree (Penal Law § 155.35); assault in the second degree (Penal Law § 120.05(4)); unlawful fleeing a police officer (Penal Law § 270.35); criminal possession of stolen property in the third degree (Penal Law § 160.50); and aggravated unlicensed operation of a motor vehicle (N.Y. Vehicle & Traffic Law ("VTL") § 511.1). (Pet. 1.) On June 27, 2013, petitioner was sentenced to the following indeterminate terms of imprisonment: 5 to 15 years for the manslaughter conviction, 2 and one-third to 7 years for the unlawful fleeing conviction, 2 and one-third to 7 years for the grand larceny charge, and 2 and one-third to 7 years for the criminal possession charge; as well as the following determinate terms of imprisonment: 7 and one-half years followed by three years of post-release supervision for the assault conviction, and 30 days for the unlicensed operation conviction. (Answer, ECF No. 12, ¶ 49; Sent'g Tr., ECF No. 12-56, at 18-20.) The sentencing court ordered that the manslaughter sentence be served consecutively to the remainder of his sentence. (Sent'g Tr. 20.)

In the instant habeas petition, petitioner challenges his conviction on the following grounds: (1) petitioner's Fourteenth Amendment rights were violated under *Batson v. Kentucky*, 479 U.S. 79 (1986); (2) the verdict was against the weight of the evidence; (3) the sentence imposed was cruel and unusual in violation of the Eighth Amendment; (4) petitioner's Sixth Amendment rights were violated because he was not present when his sentence was amended; (5) the police violated their own procedure in the course of the events at issue;

and (6) ineffective assistance of counsel. (*See* Pet. 5-11.) For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

A. Factual Background

The following facts are adduced from the instant petition and underlying record.

1. The Underlying Crimes

At just past 11:00 a.m. on June 27, 2011, two black men dressed in red entered the True Religion Clothing Company at the Tanger Outlets in Riverhead, New York. (Tr. 3[1] at 29-30.) Sales associate Shannon Holm ("Holm") asked one of the men if they needed help, and they both declined. (*Id.* at 30.) The men left the store, informing her that they would return. (*Id.*) Later, the men returned with a black woman. (*Id.* at 31.) Holm again asked one of the men if they needed help. (*Id.*) The man, who was later identified to be petitioner, declined. (*Id.*) Holm noticed that he was sweating profusely. (*Id.*) Afterwards, Holm heard the store alarm sound. She saw the two men and woman pick up merchandise from the tables and run out of the store. (*Id.*) The merchandise was valued at over $5,000. (*Id.* at 44.)

Holm ran out of the store after the group. (*Id.* at 31.) She asked passing shoppers if they had seen people carrying jeans. (*Id.* at 32.) Some pointed to a black Lincoln Town Car driving erratically out of the parking lot. (*Id.*) Holm read the license plate and noted that petitioner was driving the car. (*Id.* at 32.) She returned to the store and described the car and the individuals to her manager. (*Id.* at 32-33.)

At approximately 1:00 p.m. that day, Suffolk County Deputy Sheriff John Rung ("Deputy Sheriff Rung") was alone in a marked sheriff's unit located at the center median of the Long Island Expressway east of exit 67. (*Id.* at 54.) He received a radio notification about the black Lincoln Town Car with New Jersey license plates. (*Id.*) The notification stated that the vehicle's occupants, two black men wearing red clothing, were wanted for a Riverhead larceny. (*Id.* at 54-55.) Soon after, Deputy Sheriff Rung saw a black Lincoln Town Car with New Jersey plates being operated by a driver fitting the description issued in the notification. (*Id.* at 55.) He also saw a black woman in the front passenger seat and a black man in the back seat. (*Id.*) He pulled out from the median and followed the Town Car. (*Id.*) Deputy Sheriff Rung notified dispatch that he was following the vehicle, and he noticed that the license plate did not match the number stated in the notification. (*Id.*) He conducted a registration check on the plate. (*Id.*) Dispatch notified him that the plate came back "no hit," meaning it was either an old plate that had not been registered to a car for years, or was fake. (*Id.* at 56.)

Deputy Sheriff Rung pulled the vehicle over near exit 64. (*Id.* at 57-58) A K9 unit pulled up behind Deputy Sheriff Rung's vehicle. (*Id.* at 58.) Deputy Sheriff Rung exited his car and approached the vehicle. (*Id.*) Deputy Sheriff Greg Negra ("Deputy Sheriff Negra"), who operated the K9 unit, accompanied him. (*Id.*) As they approached the vehicle, petitioner placed it into drive and sped away. (*Id.* at 58-59.) The officers returned to their respective vehicles and

---

[1] "Tr. 3" references the May 15, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-47.)

2

followed the vehicle off exit 64 and onto a service road. (*Id.* at 59.) Petitioner drove all over the roadway, reaching 60 miles per hour very quickly. (*Id.*) Petitioner approached Route 112, which runs north and south, and made a right turn without stopping, heading north. (*Id.* at 59-61.) He drove over a median, causing debris and pieces of his vehicle to fly. (*Id.* at 61-62.) Petitioner drove south on Route 112, running a red light and driving in the northbound lane. (*Id.* at 62; Tr. 4[2] at 56; Tr. 5[3] at 100.) Deputy Sheriff Rung followed in the northbound shoulder of Route 112. (Tr. 3 at 62-63.) Other vehicles were traveling north in the northbound lane. (*Id.* at 65; Tr. 4 at 56.) The road was congested, and petitioner was driving aberrantly and fast. (Tr. 4 at 67, 82.) Petitioner's speed reached 55 miles per hour in a 40 miles per hour zone. (Tr. 5 at 100.) He also drove onto the sidewalk. (*Id.* at 99.)

When petitioner drove onto the sidewalk, Deputy Sheriff Rung notified dispatch that he and Deputy Sheriff Negra were backing off, which he thought might lead petitioner to slow down. (Tr. 3 at 66-67.) Deputy Sheriff Rung returned to the southbound lane, where he drove behind Deputy Sheriff Negra. (*Id.* at 67.) At this time, they were a "couple of hundred feet" behind petitioner's vehicle. (Tr. 4 at 105.)

Petitioner subsequently turned into a Walgreen's parking lot. (Tr. 3 at 70-71.) At that time, Maureen Fiametta was leaving Walgreen's and heard a loud bang. (Tr. 6[4] at 60.) She looked to her left and saw a black vehicle coming into the parking lot toward her. (*Id.*) She started running forward, and the vehicle was speeding directly toward her. (*Id.* at 61.) The vehicle came extremely close to her. (*Id.* at 62.)

Petitioner then exited the parking lot and drove at almost twice the posted 30 miles per hour speed limit. (Tr. 5 at 102-03.) Petitioner ignored a stop sign and subsequently made a turn at an intersection despite a red light and a "no turn on red" sign. (*Id.* at 104-05.) Petitioner drove through another red light. (*Id.* at 105-06.) Petitioner accelerated to a high rate of speed and merged onto Sunrise Highway. (*Id.* at 106.) He sped past other vehicles, sometimes driving on the shoulder and/or in close proximity to other vehicles. (*Id.* at 106-07.) Deputy Sheriff Negra estimated that petitioner was driving over 100 miles per hour. (*Id.* at 108.) Another police vehicle began following petitioner with its emergency lights activated. (*Id.*) Petitioner repeatedly attempted to evade the third police vehicle. (*Id*. at 108-09.)

Petitioner then took a service road. (Tr. 4 at 121.) When he approached an intersection at Lincoln Avenue, he collided with a Subaru. (Tr. 6 at 101-03.) The Subaru was propelled 10 feet into the air. (*Id.* at 78.) It spun around and stopped on the west side of Lincoln Avenue. (*Id.* at 103.) The airbags deployed. (Tr. 7[5] at 24.) When the car stopped, Alan Sacher ("A. Sacher"), the driver of the Subaru, realized his left knee was "split open" and saw that his wife, Gail Sacher ("G. Sacher"), who was seated in the front passenger seat, was unconscious and barely breathing. (*Id.*) He yelled for help and yelled

---

[2] "Tr. 4" references the May 16, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-48.)

[3] "Tr. 5" references the May 20, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-49.)

[4] "Tr. 6" references the May 21, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-50.)

[5] "Tr. 7" references Part 1 of the May 22, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-51.)

at his wife to wake up. (*Id.* at 20-25.) She did not respond. (*Id.*)

Deputies surrounded the Town Car. (Tr. 6 at 105.) The man in the back seat, Rashawn Smith, was trying to climb out of the vehicle. (Tr. 5 at 16.) Deputy Sheriff Negra took him out of the car and handcuffed him. (*Id.*) Another officer handcuffed petitioner. (*Id.* at 17.) A search of the vehicle revealed three bags of clothing, which were revealed to be from the True Religion Outlet Store and various other stores. (*Id.* at 19, 37-38; Tr. 6 at 81, 84; Tr. 7 at 17.) Another officer handcuffed Essence Smith, the woman seated in the front passenger seat of the vehicle. (Tr. 5 at 18.) All were placed under arrest. (*Id.*)

Both A. and G. Sacher were taken by emergency responders. (Tr. 7 at 42.) G. Sacher died of blunt impact injuries to her torso. (*Id.*) A. Sacher suffered broken wings of his vertebrae and a broken sternum with a hematoma behind it. (*Id.* at 27.) He later developed blood clots heading toward his lungs, which required surgery and invasive treatments, and he also later developed fluid around his heart caused by trauma from the crash. (*Id.* at 28-29.)

Later, petitioner insisted he was not thinking and was not in the right state of mind during the pursuit. (Tr. 8[6] at 77.) He said that he was only acting to get away because he was scared, and he thought the police would harm him. (*Id.* at 76, 79-80, 97.) He also said he was not aware of the danger he was creating. (*Id.* at 77.) In addition, petitioner stated that he did not know how fast he was going. (*Id.* at 79.)

2. The Dismissal of Potential Jurors Deborah Morton and Raul Williams

On May 13, 2013, jury selection in petitioner's trial commenced. (Jury Tr. 1[7] at 1.) During *voir dire*, prospective juror Deborah Morton ("Morton") stated that she was the mother of two adult children and was a longtime resident of Babylon, she was unemployed and babysat in her spare time, and she previously ran an after-school program and worked for a non-profit organization. (*Id.* at 44, 81-82.) The People asked the panel of prospective jurors if anyone had positive or negative feelings toward the police. (*Id.* at 92.) In response, Morton said that she did "from time to time feel that they should not be above the law as the rest of us." (*Id.*) The trial court asked if she could take each person as an individual and not "give them more credibility or less credibility because they're police officers . . . ." (*Id.* at 93.) Morton replied, "Absolutely yes, yes." (*Id.*) The People subsequently used a peremptory challenge to excuse Morton. (*Id.* at 115.)

Defense counsel made a *Batson* challenge in response, noting that Morton was the only African American in the panel. (*Id.*) The trial court stated that, in light of case law indicating that the striking of even one African-American potential juror could be a pattern, it would allow the challenge. (*Id.*) The People responded that Morton's statement that the police should not be above the law indicated that Morton had some animosity toward the police, which formed the basis of the use of the peremptory challenge to strike her. (*Id.* at 115-16.) The trial court accepted this as a nondiscriminatory reason. (*Id.* at 116.) Defense counsel argued that Morton had

---

[6] "Tr. 8" references Part 2 of the May 22, 2013 trial transcript of the underlying criminal proceeding. (ECF No. 12-52.)

[7] "Jury Tr. 1" references the May 13, 2013 transcript of the jury selection in the underlying criminal proceeding. (ECF No. 12-54.)

4

made clear that she would be impartial to police witnesses. (*Id.*) However, the trial court accepted the People's reason as a non-discriminatory reason to challenge Morton. (*Id.*)[8]

Jury selection continued on May 14, 2013. (Jury Tr. 2[9] at 1.) The People attempted to exercise a for-cause challenge as to Raul Williams ("Williams") on the ground that he did not give a satisfactory answer as to whether his brother-in-law's drug conviction would influence his decision-making in petitioner's trial. (*Id.* at 73-74.) The trial court denied the request because Williams had stated unequivocally that he could be fair, his brother-in-law's conviction was for out-of-state conduct, and that, even though he felt the particular police officers involved in that conduct did not do the right thing, he could judge police officers fairly. (*Id.* at 74.) The People subsequently exercised a peremptory challenge as to Williams. (*Id.* at 80.) Defense counsel did not object to the challenge. (*Id.*)

3. Procedural History

Following petitioner's May 24, 2014 conviction and June 27, 2013 sentencing, petitioner appealed his conviction to the New York Appellate Division, Second Department, on the following grounds: (1) his Fourteenth Amendment rights were violated by the exclusion of a juror of the same race during *voir dire*; (2) the verdict was against the weight of the evidence; (3) his sentence was harsh and excessive; and (4) the sentencing court amended his sentence in his absence. (Pet. 2.) His conviction was affirmed. (Answer ¶ 51.) Petitioner requested leave to appeal to the New York State Court of Appeals, but the request was denied on November 4, 2015. (*Id.*; *see also People v. Tucker*, 26 N.Y.3d 1043 (2015).)

4. The Instant Petition

On August 29, 2016, petitioner filed a petition for writ of habeas corpus in this Court. On November 23, 2016, respondent opposed the writ. (Resp't Br. Opp'n ("Opp'n Br."), ECF No. 12-1.) On January 23, 2017, petitioner filed a reply affidavit in support of his petition. (Pet'r Reply Br. Supp., ECF No. 15.) The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[8] The trial court noted that, had the People challenged Morton for cause, the challenge would have been rejected. (*Id.*) After the court denied defense's *Batson* challenge, defense counsel asked for a moment before proceeding, and the Court asked the People if there was any point the People wanted to add to the record concerning the Morton peremptory challenge. (*Id.*) The People also cited Morton's present unemployment and sporadic employment history as reasons for the challenge. (*Id.* at 117.) Defense counsel made no further objections to the challenge. (*Id.*)

[9] "Jury Tr. 2" references the May 14, 2013 transcript of the jury selection in the underlying criminal proceeding. (ECF No. 12-55.)

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F. 3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

A. Ground One: *Batson* Challenges

The first ground on which petitioner seeks relief is that his Fourteenth Amendment rights were violated under *Batson v. Kentucky*, 479 U.S. 79 (1986). (Pet. 5, 15.) In particular, petitioner argues that the People impermissibly exercised peremptory challenges to strike jurors Morton and Williams on the basis of race. (*Id.* at 15.)

1. The Williams Challenge[10]

The Court determines that it is procedurally barred from reviewing

---

[10] The Court notes that respondent failed to specifically address petitioner's *Batson* claim as to Williams, but the Court has nonetheless determined it is procedurally barred. *See Taylor v. Sabourin*, 269 F. Supp. 2d 20, 22 (E.D.N.Y. 2003) ("Respondent fails to address both issues in his opposition brief, nor does petitioner in his traverse brief. Consequently, the court treats these arguments as abandoned. Regardless, the court holds that petitioner's arguments on both issues lack merit . . . ."); *McCrary v. Lee*, No. 12-CV-2867 (SJF), 2013 WL 5937420, at *4 (E.D.N.Y. Oct. 29, 2013) ("[N]either Rule 5, nor any

petitioner's claim as to *Batson* for the following reasons.

A district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegation were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

The Court determines that petitioner's claim as to Raul Williams is procedurally barred from habeas review. There is no evidence that petitioner has raised this claim in any proceeding before his habeas petition. (*See, e.g.*, Appeal Br., *People v. Tucker*, No. 2013-07272 (N.Y. App. Div. 2d Dep't Oct. 2, 2014) (not discussing Williams)[11]; *People v. Tucker*, 2013-07272 (N.Y. App. Div. 2d Dep't May 21, 2015) (only peremptory challenge discussed is Morton challenge)[12].) In fact, petitioner did not object to the peremptory challenge as to Williams at trial, which is itself an "adequate and independent basis for barring habeas review." *Jamison v. Smith*, No. 98-CV-3747 (FB), 1995 WL 468279, at *2 (E.D.N.Y. July 26, 1995); *see also Wainwright v. Sykes*, 433 U.S. 72, 86-92 (1977) (contemporaneous objection rule is an independent and adequate state ground);

---

other Section 2254 Rule or federal statute, provides that any allegation in a Section 2254 habeas petition that is not specifically denied or addressed by the respondent is deemed admitted.").

[11] Respondent provided this document at ECF No. 12-9.

[12] Respondent provided this document at ECF No. 12-8.

*Glenn v. Bartlett*, 98 F.3d 721, 724-26 (2d Cir. 1996); *Owens v. Portuondo*, No. 98-CV-6559 (AJP), 1999 WL 378343, at *6 (S.D.N.Y. June 9, 1999) (citing cases), *aff'd*, 205 F.3d 1324 (2d Cir. 2000); *Torres v. Irvin*, 33 F. Supp. 2d 257, 263-65, 273-75 (S.D.N.Y. 1998); *Vera v. Hanslmaier*, 928 F. Supp. 278, 285 (S.D.N.Y. 1996) ("Failure to object at trial is an independent and adequate state procedural bar."). Thus, he has failed to "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365.

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, petitioner has failed to meet his burden. Petitioner has not provided any explanation for his failure to properly exhaust all of his claims in state court or for his failure to raise federal constitutional issues in state court.

Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust the Williams claim in state court, and because petitioner has failed to demonstrate either prejudice resulting from the default or a miscarriage of justice, the claim is procedurally barred from review by this Court. Accordingly, the Court denies habeas relief as to the Williams claim on this ground.

2. The Morton Challenge

For the reasons discussed below, the Court concludes that petitioner's *Batson* claim as to Morton is without merit.

In *Batson*, the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Galarza v. Keane*, 252 F.3d 630, 635-36 (2d Cir. 2001) 635-36 (citing *Batson*, 476 U.S. at 96-98).

"[W]hen reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza*, 252 F.3d at 635. As the Second Circuit explained in *Watson v. Ricks*,

> On direct appellate review of a *Batson* ruling, we generally afford 'great deference' to a district court's determination of discriminatory intent because that question of fact often turns on the court's evaluation of witness credibility. When a state trial court's *Batson* ruling is challenged under § 2254, our review is further limited by [AEDPA], under which we

8

will not identify constitutional error unless the record 'compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications.

427 Fed. App'x 60 (2d Cir. 2011) (citations omitted).

In the instant action, the appropriate focus is the third part of the *Batson* test, namely, "the trial court['s . . .] determin[ation] whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Galarza*, 252 F.3d at 635-36 (citation omitted). Here, the trial court determined that the People provided a nondiscriminatory reason for exercising their peremptory strike, namely, that Morton stated that she did "from time to time feel that [the police] should not be above the law as the rest of us." (Jury Tr. 1 at 92, 116.) The Court finds this justification did not compel a finding of pretext. The Second Circuit has made clear that "a juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge." *Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005) (citing *U.S. v. Rudas*, 905 F.2d 38, 40-41 (2d Cir. 1990)); *Rudas*, 905 F.2d at 41 ("The Government had a basis for believing that [the potential juror] might be prejudiced against law enforcement officers and thus not be an impartial juror."). In the context of the question, Morton's response about feelings she has towards police could reasonably be interpreted to indicate a bias against law enforcement. Although petitioner points to Morton's affirmance that she could take each person as an individual and not "give them more credibility or less credibility because they're police officers," (Jury Tr. 1 at 93), the People were free to exercise a peremptory challenge based on their general sense that she was, notwithstanding this statement, biased against officers. Further, even if "[r]easonable minds reviewing the record might disagree" about how to view the proffered justification, "on habeas review that does not suffice to supersede the trial court's credibility determination" that the challenge to Morton was not based on discriminatory intent. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).[13] In short, the Court determines that the Second Department's decision that the trial court properly denied the *Batson* challenge is not contrary to, or an unreasonable application of clearly established federal law.[14]

Accordingly, the Court denies petitioner's request for habeas relief on the ground that the trial court improperly rejected defense counsel's *Batson* challenge as to Morton.

B. Ground Two: Sufficiency of the Evidence

The second ground on which petitioner seeks relief is that the verdict was against the weight of the evidence. (Pet. 6, 16.)[15] In

---

[13] The People also noted Morton's unemployment history and sporadic employment. However, those additional justifications were unnecessary in light of the sufficiency of the initial justification, and do not in any way undermine the sufficiency of the initial justification.

[14] The Court notes that, even though petitioner's claim as to Williams is procedurally barred, the Court has considered the claim in the context of the Morton claim and determines that it does not undermine the Court's determination as to Morton. First, it is not clear to the Court from the record that Williams was a minority. Second, even assuming Williams was a minority, the sufficiency of the People's justification as to him is clear—namely, his brother-in-law's drug conviction.

[15] "Weight of evidence" is the name of a specific claim under New York State law and, thus, is not cognizable

particular, petitioner argues that the People failed to prove petitioner's guilt beyond a reasonable doubt with respect to the charge of manslaughter in the second degree because the evidence shows he was in fact guilty of the lesser included charge of criminally negligent homicide. (*Id.* at 16.) In support of his contention, petitioner states that he did not perceive the risk or the danger he created in the course of the highway pursuit, as would be required for a conviction of manslaughter in the second degree, because he was scared and nervous. (*Id.*)

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)).

It is axiomatic that "[w]here there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Ware*, 577 F.3d 442, 447 (2d Cir. 2009). This is because the task of assessing witness credibility rests solely with the jury. *Id.* (citing *United States v. Josephberg,* 562 F.3d 478, 487 (2d Cir. 2009)). Therefore, "the jury is free to believe part and disbelieve part of any witness's testimony. . . ." *Id.* This rule applies whether the evidence being weighed by the jury is direct or circumstantial. *Id.*

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999). In order to prove petitioner's guilt of the crime of manslaughter in the second degree,

---

on federal habeas review. *See, e.g.*, *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). However, the Court will construe the *pro se* petition as asserting sufficiency of the evidence claims under the Fourteenth Amendment's Due Process Clause. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970))).

the People were required to show that he recklessly caused G. Sacher's death. Penal Law § 125.15. Under Penal Law § 15.05, a person is said to be reckless when he is

> aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

A criminal defendant has been held to act recklessly when he drives a vehicle at a high rate of speed and crashes into another car. *See, e.g.*, *People v. Asaro*, 21 N.Y.3d 677, 680 (2013). In the context of automobile collisions that involve speeding, the New York Court of Appeals has held that "the culpable risk-creating conduct necessary to support a finding of recklessness or criminal negligence generally requires some additional affirmative act aside from driving faster than the posted speed limit." *Id.* at 684 (citation omitted).

Respondent argues there was ample evidence in the underlying case to show that petitioner recklessly caused G. Sacher's death. (Opp'n Br. 9.) The Court agrees. The following evidence overwhelmingly demonstrates that petitioner acted recklessly, *i.e.*, was aware of a substantial and unjustifiable risk, and disregarded that risk: he sped away from Deputy Sheriffs Rung and Negra when they approached his vehicle (Tr. 3 56); he drove all over the roadway on the Long Island Expressway (*id.* at 59); he drove over a median on Route 112 (*id.* at 61-62); he ran a red light on Route 112 (*id.* at 62); he drove on the wrong side of the road on Route 112 (*id.* at 62); he drove 55 miles per hour in a 40 miles per hour zone on Route 112 (Tr. 4 at 56), almost twice the 30 miles per hour speed limit near the Walgreen's parking lot (Tr. 5 at 102-03), and nearly 100 miles per hour on the Sunrise Highway (*id.* at 108); he drove on the sidewalk on Route 112 (Tr. 5 at 99) and in the shoulder on the Sunrise Highway (*id.* at 107); he made an illegal turn (*id.* at 104-05); he refused to comply when multiple police vehicles attempted to pull him over (*id.* at 108-09; Tr. 3 at 56-58); he nearly hit a pedestrian (Tr. 6 at 60-62); and, of course, he tragically hit the Sachers' Subaru, which was legally traveling through an intersection (Tr. 6 at 101-03). "[V]iewing the evidence in the light most favorable to the prosecution," the Court determines that this evidence far surpasses *Asaro*'s requirement of an "additional affirmative act aside from driving faster than the posted speed limit," 21 N.Y.3d at 684, and unquestionably enables "*any* rational trier of fact" to determine petitioner acted recklessly as required by Penal Law § 125.15. *See Jackson*, 443 U.S. at 319.

The Court has considered petitioner's testimony that he was not aware of such a risk during the pursuit. However, the Court determines that this testimony does not affect its ruling. As noted above, "the jury is free to believe part and disbelieve part of any witness's testimony. . . ." *Ware*, 577 F.3d at 447. Further, this Court "must defer to the jury's resolution of the weight of the evidence." *Id.* It was the role of the jury, and not of this Court, to determine whether to credit petitioner's subjective testimony, and whether, in the face of overwhelming evidence showing that petitioner grossly violated traffic laws over an extended period of time and distance, petitioner's testimony indicated that he did not drive recklessly. There is no constitutional basis to disturb the jury's decision in this case based upon the sufficiency of the evidence.

Accordingly, the Court denies the habeas petition on this ground.

## C. Ground Three: Eighth Amendment

The third ground on which petitioner seeks relief is that the sentence imposed was cruel and unusual in violation of the Eighth Amendment. (Pet. 8, 17.) In particular, petitioner argues that he was sentenced as a first-time offender to the maximum sentence allowed and he was not offered a plea, and that he was sentenced in this way because he exercised his right to trial. (*Id.* at 17.)

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, bans excessive prison terms that are "grossly disproportionate" to the crime committed. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Ewing v. California*, 538 U.S. 11, 20-21 (2003). The "grossly disproportionate" standard, however, is "applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Moreover, a sentence does not run afoul of the Eighth Amendment's prohibition of "cruel and unusual punishments" if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Mendoza v. Miller*, No. 04-CV1270 (LEK), 2008 WL 3211277, at *9 (N.D.N.Y. Aug. 6, 2008) (denying the Eighth Amendment claim of a drug offender sentenced to an indeterminate term because petitioner's sentence was "within the statutory limits in place at the time of his conviction and sentence").

Here, it is undisputed that petitioner's sentence falls within the statutory range prescribed by state law at the time the crimes were committed. *See* Penal Law § 70.00. Petitioner takes issue with the fact that he was sentenced to the maximum term allowed for each of his convictions, but that does not present a constitutional issue. *White v. Keane*, 969 F.2d at 1383. Further, petitioner's complaint that he was not offered a plea is without merit because there is no constitutional right to a plea bargain.[16] *Weatherford v. Bursey*, 429 U.S. 545, 560-61 (1977); *see, e.g.*, *Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 321 (E.D.N.Y. 2006); *Johnson v. Conway*, No. 07-CV-445 (LEK) (DRH), 2008 WL 2405709, at *12 (N.D.N.Y. Dec. 10, 2007). Thus, petitioner's claim that he is entitled to habeas relief because the sentence imposed on him was cruel and unusual is without merit, and the Court denies it.

## D. Ground Four: Presence at Sentencing

The fourth ground on which petitioner seeks relief is that petitioner's Sixth Amendment rights were violated because he received an amended Uniform Sentence and Commitment form (the "amended form") after his sentence. (Pet. 9, 18.)[17] Because this correction occurred when petitioner was not present, petitioner claims his statutory right to be present at the time of sentencing under N.Y.C.P.L. § 380.40 was violated. (*Id.* at 18.) As a threshold matter, rights provided by state law cannot form the basis for habeas relief in federal court. *Rios v. Artuz*, No. 07-

---

[16] To the extent that petitioner also claims that he was sentenced to the maximum because he exercised his right to trial, there is no evidence to support a constitutional claim for retaliatory sentencing by the sentencing court.

[17] Respondent provided the amended form at ECF No. 12-17.

CV-330 (NGG), 2007 WL 1958899, at *9 n.4 (E.D.N.Y. June 29, 2007). Thus, petitioner's claim that his right to be present under N.Y.C.P.L. § 380.40 is not cognizable in the instant action.

Petitioner also cites the Sixth Amendment in asserting this ground for relief, which is a cognizable basis for federal habeas review. Defendants have both Sixth Amendment and Due Process rights to be present when they are sentenced. *U.S. v. DeMartino*, 112 F.3d 75, 78 (2d Cir. 1997). However, petitioner's claim as to his constitutional rights is also without merit. Simply put, defendant was not sentenced or resentenced when the form was amended. Instead, the form was amended to reflect the actual sentence he received. Petitioner does not have a constitutional right to be present for such an administrative act, which does not rise to the level of imposing a new sentence "in place of the vacated sentence"—which is an act that would trigger the constitutional right to be present. *U.S. v. DeMott*, 513 F.3d 55 (2d Cir. 2008).[18]

In light of the foregoing, the Court determines that habeas relief is not warranted on the ground that petitioner was not present when his Uniform Sentence and Commitment form was amended.

### E. Ground Five: Violations of Police Procedure

The fifth ground on which petitioner seeks relief is that the police violated their own procedure in the course of the pursuit. (Pet. 11, 19.) In particular, petitioner argues that, under New York Vehicle and Traffic Law § 1104, emergency vehicle drivers must drive with due regard for the safety of others. (*Id.* at 19.) Petitioner asserts that, in the course of the pursuit, the police pursued him at high speed northbound in a southbound lane in violation of the law, and that this was not justified because petitioner had not committed a violent crime. (*Id.*)

The Court determines that this claim is procedurally barred because petitioner did not exhaust the claim in state court. There is no evidence that petitioner raised this claim in any proceeding before his habeas petition. (*See, e.g.*, Appeal Br., *People v. Tucker*, No. 2013-07272 (N.Y. App. Div. 2d Dep't Oct. 2, 2014) (no mention of police violating their own procedure); *People v. Tucker*, 2013-07272 (N.Y. App. Div. 2d Dep't May 21, 2015) (same).) Thus, petitioner has failed to "fairly presen[t] his [claim] to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365.

Further, just as with petitioner's *Batson* claim as to Williams, petitioner has failed to meet the burden required to overcome the procedural bar. *See Coleman*, 501 U.S. at 750. Petitioner has not provided any explanation for his failure to properly exhaust his claim in state court. Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust this claim in state court, and because petitioner has failed to demonstrate either prejudice resulting from the default or a miscarriage of justice, the claim is procedurally barred from review by this

---

[18] Even assuming petitioner had the constitutional right to be present when his form was corrected and that right was violated, the error would be subject to harmless error analysis. *DeMott*, 513 F.3d at 55. On that separate and independent basis, habeas relief is not warranted because the amended form merely reflects the sentence imposed at the sentencing hearing at which petitioner was present, thus making it an uncontestable fact that his presence would not have altered the outcome of the administrative act.

Court. Accordingly, the Court denies habeas relief as to this claim on this ground.

Although petitioner's claim that the police violated their own procedure in the course of the pursuit is procedurally barred from habeas review for a failure to exhaust the claim in state court, the Court also concludes that it is without merit for the separate and independent ground that the claim does not implicate federal rights. In particular, the law invoked by petitioner in this claim is state law, and, even assuming the law provides a right to petitioner, and even assuming that the police violated that right in the course of the pursuit, as noted above, state law cannot form the basis for habeas relief in federal court. *Rios*, 2007 WL 1958899, at *9 n.4. Thus, petitioner's claim that he is entitled to habeas relief because the police violated their own procedure in the course of the pursuit is not cognizable in the instant action. For these reasons, the claim does not provide a basis for habeas relief.

F. Ground Six: Ineffective Assistance of Counsel

The final ground on which petitioner seeks relief is ineffective assistance of counsel. (Pet. 11, 20.) In particular, petitioner argues that his counsel failed to effectively represent him because he failed to file certain motions, he did not visit petitioner frequently, including at critical times before trial, and this same counsel continued to represent him at trial even after he requested (and was denied) new counsel, which petitioner asserts to have been a conflict of interest. (*Id.* at 20.)

1. Procedural Bar

The Court determines that petitioner's ineffective assistance of counsel claim is also procedurally barred because he did not exhaust the claim in state court.

Although petitioner requested new counsel at trial, there is no evidence that petitioner raised an ineffective assistance of counsel claim in any proceeding before his habeas petition. (*See, e.g.*, Appeal Br., *People v. Tucker*, No. 2013-07272 (N.Y. App. Div. 2d Dep't Oct. 2, 2014) (no mention of ineffective assistance of counsel); *People v. Tucker*, 2013-07272 (N.Y. App. Div. 2d Dep't May 21, 2015) (same).) Thus, petitioner has failed to "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365.

Further, just as with petitioner's *Batson* claim as to Williams and his claim that the police violated their own procedure in the course of the pursuit, petitioner has failed to meet the burden required to overcome the procedural bar. *See Coleman*, 501 U.S. at 750. Petitioner has not provided any explanation for his failure to properly exhaust this claim in state court. Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust his ineffective assistance of counsel claim in state court, and because petitioner has failed to demonstrate either prejudice resulting from the default or a miscarriage of justice, the claim is procedurally barred from review by this Court. Accordingly, the Court denies habeas relief as to the ineffective assistance of counsel claim on this ground.

2. Merits Analysis

Although petitioner's ineffective assistance of counsel claim is procedurally barred from habeas review, the Court, in an abundance of caution, has analyzed the merits of the claim and concludes that it is without merit for the reasons discussed below.

Under the standard promulgated in

*Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). For instance, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner, who is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). However, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (citations omitted). Defendants bear the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

Petitioner has failed to demonstrate how defense counsel's failure to file certain

motions[19] or to visit him frequently fell outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Moreover, in analyzing the trial transcript, the Court concludes that the record shows that counsel's performance was not constitutionally defective. Further, petitioner has failed to demonstrate that any prejudice resulted from the alleged ineffective representation. *See Whidbee v. United States*, 09-CV-780 (CPS), 2009 WL 2242341, at *5 (E.D.N.Y. July 27, 2009) (finding complaints of "poor communication with his attorney . . . legally insufficient in the absence of some showing of prejudice resulting from the lack of communication"). Indeed, as discussed *supra*, the evidence of petitioner's guilt was overwhelming and, therefore, there is no reason to believe that absent the alleged deficiency the jury would have reached a different conclusion. *See Butts v. Walker*, No. 01-CV-5914 (JG), 2003 WL 22670921, at *8 (E.D.N.Y. Nov. 6, 2003).

Petitioner's argument that habeas relief is warranted because his counsel continued to represent him after he requested that the trial court replace him also fails. Generally speaking, the Sixth Amendment right to counsel includes the right to conflict-free counsel. *Strickland*, 466 U.S. at 692; *see, e.g.*, *Wright v. La Clair*, No. 03-CV-4956 (DLI), 2009 WL 705689 (E.D.N.Y. Mar. 16, 2009). If a petitioner "can demonstrate that his attorney labored under an actual conflict of interest and that the 'actual conflict of interest adversely affected his lawyer's performance,'" he "is entitled to a presumption of prejudice." *U.S. v. White*, 174 F.3d 290, 295 (2d Cir. 1999) (citation omitted). However, the Second Circuit has clearly stated that requesting new counsel does not create a conflict of interest in and of itself. *Id.* at 296. In *White*, the Court "decline[d] to adopt any broad rule that would suggest that, simply by expressing dissatisfaction with his attorney's performance, a defendant can create a 'conflict of interest' that can be said to require the attorney to choose between advancing the attorney's own cause and that of her client." *Id.* The Court found insufficient that the defendant disagreed with his attorney about, *inter alia*, whether to file certain motions, that he raised complaints of this nature before the trial court, and that he made requests for substitute counsel, characterizing such conduct as "routine." *Id.* Petitioner's claim here is no different. Thus, petitioner's ineffective counsel claim concerning an alleged conflict of interest fails as well.

Accordingly, based on the foregoing, petitioner's ineffective assistance of counsel claim fails in its entirety.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 24, 2017

---

[19] The Court notes that petitioner did not specify which motions he thought defense counsel wrongly failed to make. Thus, there is no basis to conclude ineffective assistance of counsel on that ground.

Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Rosalind C. Gray, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.